NATURAL AGGREGATES CORPORATION v BRIGHTON
TOWNSHIP

Docket No. 165934. Submitted April 11, 1995, at Detroit. Decided
September 8, 1995, at 9:05 A.M.

Natural Aggregates Corporation brought an action in the Living-
ston Circuit Court against Brighton Township, seeking a decla-
ration that a Brighton Township ordinance governing soil
removal was unconstitutional, an injunction against enforce-
ment of the ordinance and a stop work order issued by the
township against the plaintiff, and damages. The township
counterclaimed for an injunction against the plaintiff's contin-
ued violation of the ordinance. The ordinance had been adopted
pursuant to the township ordinance act, MCL 41.181 *et seq.*;
MSA 5.45(1) *et seq.*, and required an annual permit for quarry-
ing, mining, or removing soil, sand, gravel, and similar mate-
rial from land in the township. The ordinance specifically
required that a reclamation plan be filed with a soil removal
permit application and that a surety bond be obtained. The
ordinance also required a separate permit and surety bond for
bringing off-site fill material to land in the township. Following
a bench trial, the court, Daniel A. Burress, J., determined that
the ordinance was constitutional and could be enforced against
the plaintiff. Accordingly, the court entered a judgment enjoin-
ing the plaintiff from continuing sand and gravel mining opera-
tions in violation of the ordinance and ordering the township to
issue a soil removal permit to the plaintiff if the plaintiff posted
a surety bond and presented a land reclamation plan. The
plaintiff appealed.

The Court of Appeals *held:*

1. The township ordinance act provides that a township
board may adopt ordinances regulating the public health,
safety, and general welfare of persons and property. MCL

REFERENCES

Am Jur 2d, Administrative Law § 34; Constitutional Law § 339;
Municipal Corporations, Counties, and Other Political Subdivi-
sions §§ 362, 390, 391; Zoning §§ 2, 3.
See ALR Index under Administrative Law; Delegation of Powers;
Municipal Corporations; Zoning.

41.181; MSA 5.45(1). The condition of Brighton Township land from which natural resources are extracted is a local concern affecting the public health, safety, and welfare of persons and property within the township and is therefore a matter that Brighton Township may regulate by ordinance, as allowed by the township ordinance act. The requirement under the challenged ordinance of a land reclamation plan and a surety bond for the issuance of a soil removal permit is a reasonable use of police power pursuant to the township ordinance act.

2. The challenged ordinance is not a disguised zoning ordinance that cannot be imposed retroactively on a prior nonconforming user like the plaintiff. The ordinance does not regulate the use of land according to districts, areas, or locations, but according to the amount of soil, sand, gravel, or similar material removed from a site.

3. The challenged ordinance does not represent an unconstitutional delegation by a legislative body to an administrative body of the power to regulate public conduct. The ordinance does not confer unlimited discretion upon the township board in determining the amount of a surety bond or whether to issue or renew a soil removal permit. The ordinance contains flexible standards that are reasonably precise as the subject matter requires or permits.

Affirmed.

1. TOWNSHIPS — ORDINANCES — TOWNSHIP ORDINANCE ACT — JUDICIAL REVIEW.

A township ordinance adopted pursuant to authority under the township ordinance act for the regulation of the public health, safety, and general welfare of persons and property in the township is not subject to judicial intervention absent abuse of discretion, excessive use of power, or error of law; a court entertaining a challenge to such an ordinance must determine whether the ordinance is within the range of conferred discretionary powers and then determine if it is reasonable; the test for determining whether the ordinance is reasonable requires an assessment of the existence of a rational relationship between the exercise of police power and the public health, safety, morals, or general welfare (MCL 41.181; MSA 5.45[1]).

2. TOWNSHIPS — ORDINANCES — ZONING.

Whether a township ordinance is a zoning ordinance may be determined by considering the substance of its provisions and terms, and its relation to the general plan of zoning in the township; the distinction between zoning and regulatory ordinances cannot be predicated on whether the purpose of the ordinance is to promote the public good, because both may have

as their purpose the public good; a zoning ordinance generally regulates the use of land according to districts, areas, or location.

3. STATUTES — DELEGATION OF POWERS.
When a legislative body chooses to vest an administrative body with the power to regulate public conduct, the legislative body must provide adequate standards to protect the public from the exercise of uncontrolled, arbitrary power; principles considered in determining whether an act provides sufficient standards for delegation of authority are: the act in question must be read as a whole and the provision in question construed with reference to the entire act; the standard should be as reasonably precise as the subject matter requires or permits; if possible, the statute must be construed as valid, i.e., it must be construed as conferring administrative, not legislative, power and as giving discretionary, not arbitrary, authority; and the statute must satisfy due process requirements.

*Pevos & Pevos* (by *Daniel N. Pevos* and *Debra Beth Pevos*), for the plaintiff.

*Franklin & Leonard, P.C.* (by *Bruce W. Franklin* and *Kelly A. Kruse*), for the defendant.

Before: CONNOR, P.J., and SMOLENSKI and W. J. NYKAMP,* JJ.

SMOLENSKI, J. Plaintiff Natural Aggregates Corporation appeals as of right a judgment entered on behalf of defendant Brighton Township. We affirm.

The questions presented before this Court are whether defendant had the authority to regulate plaintiff's sand and gravel mining operation under the township ordinance act (TOA), MCL 41.181; MSA 5.45(1), and whether defendant's ordinance contained sufficient standards.

I

Since 1968, plaintiff has been operating a sand

---

* Circuit judge, sitting on the Court of Appeals by assignment.

and gravel mining and processing business on certain real property located within defendant township. Sometime around 1971, this property was zoned to permit the land to be used for sand and gravel extraction and processing pursuant to defendant's "NR" (natural resources) zoning ordinance.

In 1978, defendant adopted ordinance no. 40, which imposed certain regulations upon plaintiff's business. However, ordinance no. 40 did not require plaintiff to obtain a permit. In 1980, defendant replaced ordinance no. 40 with ordinance no. 52, which made it unlawful for persons to mine sand and gravel without obtaining a permit from defendant and posting a surety bond. In 1982 and pursuant to ordinance no. 52, plaintiff applied for and obtained a permit from defendant, and posted a $25,000 surety bond. Although not expressly required by ordinance no. 52, plaintiff also submitted a land reclamation plan. Plaintiff's permit was renewed each year from 1982 until 1989.

When plaintiff renewed its permit in 1987, defendant requested that plaintiff provide an updated land reclamation plan. In 1988, plaintiff submitted a plan, which called for bringing off-site fill material onto plaintiff's property.

Effective February 10, 1989, defendant adopted the "Brighton Township Soil Removal Ordinance" (ordinance no. 86), pursuant to the TOA. Ordinance no. 86 replaced ordinance no. 52, but still generally required a yearly permit for quarrying, mining, or removing soil, sand, gravel, and similar material from township land. Ordinance no. 86 also specifically required that a reclamation plan be filed with a soil removal permit application and that a surety bond be obtained. In addition, ordinance no. 86 required a separate permit and

surety bond for bringing off-site fill material onto township property.

The "fill" permit and associated surety bond requirements of ordinance no. 86 affected plaintiff's operation because plaintiff was engaged in bringing off-site fill material onto its property for the purpose of reclaiming its land. In December 1989, after being unsuccessful in finding a bonding company that would provide a surety bond for its fill operation, plaintiff's representative informed defendant's board that offsite fill material would no longer be brought onto plaintiff's property and that plaintiff's land reclamation plan would be revised.

In 1990, plaintiff submitted a revised land reclamation plan. Because plaintiff was no longer bringing off-site fill material onto its property, this plan called for the creation of a lake and subdivision. Defendant subsequently required plaintiff to post a $150,000 surety bond pursuant to a recommendation by defendant's engineers, who estimated that the cost of restoring plaintiff's property would be $600,000. Plaintiff informed defendant that it would not comply with the bond increase, and defendant's board rejected plaintiff's 1990 soil removal permit application.

Defendant subsequently posted a stop work order on plaintiff's premises. Immediately thereafter, plaintiff filed a complaint seeking a declaratory judgment that ordinance no. 86 was invalid and unconstitutional, an injunction enjoining defendant from enforcing both the stop work order and ordinance no. 86, and damages. A temporary, and then permanent, injunction issued enjoining defendant from interfering with plaintiff's operation and ordering plaintiff to deposit a $25,000 cash bond with the county clerk.

Defendant subsequently filed a countercomplaint

seeking an injunction either preventing plaintiff from continuing its operation in violation of ordinance no. 86 or ordering plaintiff to comply with ordinance no. 86 as a condition of its continued operation. Following a bench trial, the trial court issued a written opinion determining that defendant had the authority under ordinance no. 86 to regulate plaintiff's business, and that ordinance no. 86 was constitutional. Judgment was subsequently entered denying plaintiff's claims for injunctive relief and damages, enjoining plaintiff from continuing its operation in violation of ordinance no. 86, and ordering defendant to issue a soil removal permit to plaintiff if plaintiff posted the required $150,000 surety bond and presented a land reclamation plan.

II

The TOA provides in relevant part:

The township board of a township may . . . adopt ordinances regulating the public health, safety, and general welfare of persons and property, including, but not limited to fire protection, licensing or use of bicycles, traffic and parking of vehicles, sidewalk maintenance and repairs, the licensing of business establishments, the licensing and regulating of public amusements . . . . [MCL 41.181; MSA 5.45(1).]

Plaintiff concedes that defendant has the authority under the TOA to license its business. However, relying on the express language of the TOA in its various enactments, plaintiff contends that the Legislature has "repeatedly and intentionally withheld from townships the right to *regulate* business establishments." Plaintiff cites, for instance, 1963 PA 39, which provided that certain

activities could be licensed and regulated, but made no reference to businesses:

> The township board of any township may . . . adopt ordinances regulating the public health, safety and general welfare of persons and property therein, fire protection, the licensing or use of bicycles, traffic and parking of vehicles, sidewalk maintenance and repairs, the *licensing and regulating* of hawkers, vendors, peddlers and solicitors, and provide penalties for the violation thereof . . . . [1963 PA 39, MCL 41.181; MSA 5.45(1). Emphasis supplied.]

1978 PA 590 again provided that certain activities could be licensed and regulated, but only that a business could be licensed:

> The township board of a township may . . . adopt ordinances regulating the public health, safety, and general welfare of persons and property, fire protection, the licensing or use of bicycles, traffic and parking of vehicles, sidewalk maintenance and repairs, the *licensing* of business establishments, the *licensing and regulating* of hawkers, vendors, peddlers, solicitors, pawnbrokers, circuses, carnivals, and public amusements, and provide penalties for the violation of the regulations . . . . [1978 PA 590, MCL 41.181; MSA 5.45(1). Emphasis supplied.]

1989 PA 78 provided similarly:

> The township board of a township may . . . adopt ordinances regulating the public health, safety, and general welfare of persons and property, including but not limited to fire protection, licensing or use of bicycles, traffic and parking of vehicles, sidewalk maintenance and repairs, the *licensing* of business establishments, and the *licensing and regulating* of public amusements, and

provide penalties for the violation of the ordi-
nances. [1989 PA 78, MCL 41.181; MSA 5.45(1).
Emphasis supplied.]

However, plaintiff weakens its argument by con-
ceding that defendant has the authority under the
TOA to enact reasonable restrictions on its mining
operation, such as "limitations on hours of opera-
tion, requirements for dust control, smoke and
noise abatement, and protective fencing." Plaintiff
nevertheless contends that ordinance no. 86 goes
beyond such health and safety measures by at-
tempting to "regulate esthetics by imposing, retro-
actively, on a 25 year business, an obligation to
satisfy fluctuating demands of the community with
respect to eventual development of the mining
site." We construe plaintiff's argument as chal-
lenging either defendant's authority under the TOA
to require plaintiff to file a land reclamation plan
and surety bond as conditions for obtaining a soil
removal license or the reasonableness of those
requirements.

In reviewing plaintiff's contention, we are mind-
ful that "township regulations enacted under the
township ordinance act are not subject to judicial
intervention absent abuse of discretion, excessive
use of power, or error of law." *Square Lake Hills
Condominium Ass'n v Bloomfield Twp,* 437 Mich
310, 317; 471 NW2d 321 (1991) (RILEY, J.). Rather,
"our function is to determine whether a township
ordinance is within the range of conferred discre-
tionary powers and then determine if it is reason-
able." *Id.* "The test for determining whether an
ordinance is reasonable requires us to assess the
existence of a rational relationship between the
exercise of police power and the public health,
safety, morals, or general welfare in a particular
manner in a given case." *Id.* at 318. Const 1963,

art 7, § 34 requires "courts to liberally construe all legislative and constitutional powers conferred upon townships." *Square Lake, supra* at 319 (RILEY, J.). "While this constitutional directive does not provide an independent grant of authority for townships to act in a particular area, its mandate of liberal construction does provide a framework for analysis of [plaintiff's] arguments." *Id.*

In *Checker Cab Co v Romulus Twp,* 371 Mich 232, 234; 123 NW2d 772 (1963), our Supreme Court stated that a taxicab business "affects the health and safety of passengers, motorists, pedestrians, and other persons and property within the township . . . and may, therefore, be regulated by the township, by licensure or otherwise, pursuant to express legislative authority [under the TOA] to adopt ordinances regulating, among other things, health and safety of persons and property."

In *Square Lake, supra,* Bloomfield Township enacted an ordinance that regulated the number of boats that could be launched or docked on a lake according to the length of a riparian property owner's lake frontage. *Id.* at 315, 330-333 (RILEY, J.). The plaintiff condominium association, which owned an easement that allowed condominium residents on back lots access to Square Lake, brought an action against Bloomfield Township to challenge the ordinance. *Id.* at 314-315 (RILEY, J.). The trial court held that Bloomfield Township could not regulate boat docking and launching under the TOA, and this Court affirmed. *Id.* at 316.

In opinions by Justice RILEY, joined by Justices BRICKLEY and GRIFFIN, and Justice BOYLE, concurring, our Supreme Court held that a township has the authority under the TOA to regulate boat docking and launching by limiting those activities on the basis of the lake frontage held by the riparian owners. *Id.* at 327 (RILEY, J.), 334 (BOYLE, J.). In

the lead opinion, Justice RILEY rejected the plaintiff condominium association's argument that Bloomfield Township did not have the authority under the TOA to regulate boat docking and launching. Relying in part on *Checker Cab, supra,* Justice RILEY stated at 437 Mich 322:

> When the Legislature added the language to the township ordinance act giving townships the ability to "adopt ordinances regulating the public health, safety and general welfare of persons and property," it provided a statutory mechanism for townships to adopt and enforce regulations, purely local in nature, to enhance the health and safety within its community. . . . The regulation of boat docking and launching by Bloomfield Township on inland lakes is a perfectly reasonable use of township police power.[18]

---

[18] Our review of Michigan case law evidences numerous instances in which we have upheld township ordinances regulating a broad range of activities, all of which were enacted to protect the health, safety, and welfare of persons and property within the townships. . . . In *Casco Twp v Brame Trucking Co, Inc,* 34 Mich App 466; 191 NW2d 506 (1971), a soil removal ordinance was reviewed. . . .

---

Justice RILEY also rejected the plaintiff's argument that Bloomfield Township's ordinance was an unreasonable use of police power:

> In the instant case, Bloomfield Township determined that it was necessary to regulate boat usage in order to preserve and protect the health, safety, and welfare of persons using and living near the inland lakes. The township found that lack of regulation resulted in a nuisance condition, an impairment of important and irreplaceable natural resources, the destruction of property values, and a threatening of the public health, safety, and welfare. Furthermore, the township recognized that if proper safety precautions were not immediately taken, the use of boats on inland lakes could be very dangerous to the persons and riparian

property owners using the lake. In our view, Bloomfield Township took reasonable steps to alleviate future problems by recognizing this potential hazard. [*Square Lake, supra* at 326-327.]

We note that a majority of justices did not concur with the reasoning of Justice Riley's opinion in *Square Lake,* and that the Riley opinion thus, is not binding precedent under the doctrine of stare decisis. *Negri v Slotkin,* 397 Mich 105, 109; 244 NW2d 98 (1976). However, we find its reasoning applicable to this case, and therefore adopt the opinion as our own. *Cox v Dearborn Heights,* 210 Mich App 389, 396; 534 NW2d 135 (1995).

We acknowledge that in the context of zoning, our Supreme Court has indicated that a statewide public interest exists in the extraction of natural resources. *Silva v Ada Twp,* 416 Mich 153, 160; 330 NW2d 663 (1982). However, we believe that the particular condition of township land from which natural resources are being extracted is a local concern affecting the public health, safety, and welfare of persons and property within a township. *Square Lake, supra* at 322, n 18 (Riley, J.) (citing *Casco, supra*). Thus, as plaintiff has conceded, defendant has the authority not only to license but also to regulate plaintiff's business under the TOA. *Checker Cab, supra.*

Ordinance no. 86 provides that it was enacted for the following purposes:

> This ordinance is enacted for the purpose of promoting the public health, welfare and safety of the residents of Brighton Township and to preserve the natural resources and to prevent the creation of nuisances and hazards to the public health, welfare and safety. [Ordinance no. 86, § 2.]

Each of these concerns is reasonable and addresses a legitimate governmental interest. *Square*

*Lake, supra* at 325 (RILEY, J.).[1] Thus, requiring a person or business that removes soil, sand, gravel, and so forth, from township property to file a land reclamation plan and obtain a surety bond are reasonable steps taken by defendant to preserve and prevent problems or hazards with township property either while the person or business is engaged in or has finished removing these materials. *Square Lake, supra* at 327 (RILEY, J.). Accordingly, we conclude that under the circumstances of this case the requirements of a land reclamation plan and a surety bond are reasonable uses of the township police power under the TOA. *Id.* (RILEY, J.).

Alternatively, plaintiff argues that the requirements of a land reclamation plan and surety bond constitute disguised zoning that cannot be imposed retroactively on a prior nonconforming user such as plaintiff.

A zoning ordinance regulates the use of land and buildings according to districts, areas, or locations. *Square Lake, supra* at 323 (RILEY, J.) (citing 8 McQuillin, Municipal Corporations, § 25.53, p 137), 348 (LEVIN, J., dissenting) (citing McQuillin, *supra* at § 25.01, p 6). Whether a particular ordinance is a zoning ordinance may be determined by considering the substance of its provisions and terms, and its relation to the general plan of zoning in the city. *Square Lake, supra* at 323 (RILEY, J.) (citing McQuillin, *supra* at § 25.53, p 137), 351, n 32 (LEVIN, J.) (citing McQuillin, *supra* at § 25.10, p 31). The distinction between zoning and regulatory ordinances cannot be predicated on whether the purpose of the ordinance is to pro-

---

[1] We reject plaintiff's unsupported inference that ordinance no. 86 is invalidly based on aesthetic considerations. See, e.g., *Recreational Vehicle United Citizens Ass'n v Sterling Heights,* 165 Mich App 130, 140; 418 NW2d 702 (1987).

mote the public good, since both may have as their purpose the public good. *People v Strobridge,* 127 Mich App 705, 710; 339 NW2d 531 (1983).

In *Square Lake,* the plaintiff condominium association contended that Bloomfield Township's boat docking and launching ordinance was a zoning ordinance because it limited "the use of lake frontage based on the number of feet of lake frontage owned." *Id.* at 323 (RILEY, J.). Justice RILEY rejected the plaintiff's contention:

> · Bloomfield Township ordinance no. 397 is *not* a zoning ordinance. The ordinance does *not* regulate the use of land or lake frontage. Rather, it regulates an "activity" by limiting the number of boats that can be parked or "launched and/or docked adjacent to each separate frontage." [*Id.* Emphasis in original.]

However, in separate opinions, Justice LEVIN and Chief Justice CAVANAGH found that Bloomfield Township's ordinance regulated the use of land, and thus constituted a zoning ordinance, because it regulated how lake frontage owners could exercise their riparian rights to dock boats according to the location of their land and the length of their lake frontage. *Id.* at 339, n 14, 352 (LEVIN, J.), 352-353 (CAVANAGH, C.J., dissenting).

In this case, defendant's "NR" (natural resources) zoning ordinance provides that the principal permitted uses in an "NR" district are extracting or processing sand and gravel, or mining deposits of limestone or similar materials, and that the removal of sand and gravel shall be carried on within the limits of an "NR" district. Plaintiff operates its business in an "NR" district. However, the record does not indicate whether plaintiff is subject to the permit requirements of defendant's "NR" zoning ordinance.

In considering the substance of ordinance no. 86 and its relation to defendant's general zoning plan, we note that ordinance no. 86 defines "quarry" as follows:

> [A]ny tract or parcel of land or part thereof used for the purpose of searching for or the extraction of stone, gravel, marl, peat, topsoil, or similar materials including stripping and pit type operations. [Ordinance no. 86, § 3(B). Emphasis supplied.]

Thus, quarry is not defined with regard to a zoning scheme, and could conceivably include a quarry operating as a prior nonconforming use in an area not zoned "NR." See, e.g., *Orion Twp v Weber,* 83 Mich App 712; 269 NW2d 275 (1978).

Ordinance no. 86 generally provides that it is unlawful for any person to operate a quarry, or strip or remove topsoil, sand, and so forth, from township property without obtaining a permit from defendant's board.[2] An exception not requiring a permit but nevertheless requiring the approval of defendant's board is made where more than twenty but less than five thousand yards of material is to be removed from a construction site.[3] Thus, the applicability of the permit requirement under ordinance no. 86 does not depend upon a zoning or districting scheme, but rather depends upon the amount of soil, sand, gravel, and so forth, to be removed from a site.

We also find Justice RILEY's "use" versus "activity" analysis in *Square Lake* persuasive. In this case, ordinance no. 86 does not provide whether soil, sand, gravel, and so forth, may be removed from township land. Thus, ordinance no. 86 does

[2] Ordinance no. 86, § 4.
[3] Ordinance no. 86, § 4.

not regulate the use of land. Rather, as relevant to plaintiff, ordinance no. 86 generally provides that where such material is removed, this "activity" must be conducted pursuant to certain regulations, i.e., the one removing the material must obtain a permit, file a land reclamation plan, and obtain a surety bond.

We reject plaintiff's argument that ordinance no. 86 is a zoning ordinance because townships have historically "depended upon zoning ordinances adopted pursuant to the provisions of the Township Rural Zoning Act" (TRZA), MCL 125.271 *et seq.*; MSA 5.2963(1) *et seq.*, to regulate sand and gravel mining, as evidenced by numerous Michigan cases concerning township zoning of this industry.[4] If authorized, a township may attack township concerns through more than one ordinance. Compare *Hess v West Bloomfield Twp,* 439 Mich 550, 553; 486 NW2d 628 (1992) (townships may regulate boat docking under the TRZA), with *Square Lake, supra* at 327 (RILEY, J.), 334 (BOYLE, J.) (townships may regulate boat docking under the TOA); see also *Recreational Vehicle United Citizens Ass'n v Sterling Heights,* 165 Mich App 130, 140; 418 NW2d 702 (1987).

Thus, we conclude that ordinance no. 86 is not a zoning ordinance, but a regulatory ordinance under the TOA. Unlike § 16 of the TRZA, MCL 125.286; MSA 5.2963(16), the grant of power from the state to townships under the TOA is not made subject to the rights of those having nonconforming uses at the time an ordinance enacted pursuant to the TOA becomes effective. *Casco, supra* at 470-471. Accordingly, assuming without deciding that plaintiff had

[4] Plaintiff cites, among others, *Silva, supra, American Aggregates Corp v Highland Twp,* 151 Mich App 37; 390 NW2d 192 (1986), and *Compton Sand & Gravel Co v Dryden Twp,* 125 Mich App 383; 336 NW2d 810 (1983).

a prior nonconforming use before the enactment of ordinance no. 86, plaintiff gained no right to continue such use after the enactment of ordinance no. 86. *Casco, supra.*

In summary, we conclude that defendant had the authority to license and regulate plaintiff's sand and gravel business under the TOA.

### III

Lastly, plaintiff argues that ordinance no. 86 fails to provide adequate standards[5] for the review of mining permit renewal applications, particularly for determining the amount of a surety bond, which plaintiff characterizes as determinable "at the whim of whatever group of trustees happens to be in office." Plaintiff relies on *Orion Twp, supra,* in which this Court discussed the adequacy of several standards in a township ordinance regulating a sand and gravel business, including the following standard:

> Examining § 2D(1) first, we note that it provides that:
>
> "The Board of Appeals shall authorize the issuance of a permit only if it finds that the granting of said permit will (1) not be injurious to the public health, safety and welfare of the Township and its residents . . . ."
>
> The quoted language violates the Supreme Court's holding in *Osius v City of St Clair Shores,* 344 Mich 693, 699-700; 75 NW2d 25 (1956), wherein it concluded that ordinances cannot:
>
> "be saved by . . . broad statements as to the public health, safety, and general welfare, since such statements afford no sufficient guide for the board in the exercise of its discretion."

[5] Although defendant also raises several other arguments, we confine our consideration to the issue contained in the statement of the question presented. *Hammack v Lutheran Social Services,* 211 Mich App 1, 7; 535 NW2d 215 (1995).

Therefore, we find that § 2D(1) is unconstitutional on its face. . . . [*Orion Twp, supra* at 717.]

Plaintiff contends that the following provisions of ordinance no. 86 lack adequate standards:

The permit shall be issued in the event the Township Board shall determine that the issuance of the permit would not detrimentally affect the public health, safety, morals and general welfare of the citizens of Brighton Township. . . . [Ordinance No. 86, § 4(C).]

\* \* \*

The Township Board shall require such other performance standards where because of peculiar conditions they deem it necessary for the protection of health, safety, morals and well being of the citizens of the township. [Ordinance no. 86, § 4(D) (1)(f).]

When a legislative body chooses to vest an administrative body[6] with the power to regulate public conduct, the legislative body must provide adequate standards to protect the public from the exercise of uncontrolled, arbitrary power. *West Bloomfield Hosp v Certificate of Need Bd*, 208 Mich App 393, 399; 528 NW2d 744 (1995). In determining whether a statute or ordinance contains adequate standards, this Court considers the following guidelines adopted by our Supreme Court:

First, the act in question must be read as a whole; the provision in question must be construed

---

[6] In adopting an ordinance regulating soil removal, defendant's board acts as a legislative body. MCL 41.181; MSA 5.45(1); *Osius, supra* at 695. However, as defendant's supervisor acknowledged at trial, in determining whether to grant a soil removal permit, defendant's township board acts in an administrative capacity. See *Florka v Detroit*, 369 Mich 568, 579; 120 NW2d 797 (1963); *Osius, supra* at 695-697.

with reference to the entire act. Next, the standard should be as reasonably precise as the subject matter requires or permits. Third, if possible, the statute must be construed as being valid, that is, it must be construed as conferring administrative, not legislative, power and as giving discretionary, not arbitrary, authority. Last, the statute must satisfy due process requirements. [*Attorney General v Public Service Comm,* 161 Mich App 506, 510; 411 NW2d 469 (1987); see also *Kopietz v Zoning Bd of Appeals for the City of the Village of Clarkston,* 211 Mich App 666; 535 NW2d 910 (1995).

Moreover, as stated in *Petrus v Dickinson Co Bd of Comm'rs,* 184 Mich App 282, 294-295; 457 NW2d 359 (1990):

Our Supreme Court has also recognized that the constitution must not be regarded as denying legislators the ability to set forth standards that are flexible and practicable enough so that those standards can be adapted to conditions that involve details with which the Legislature cannot deal practically on an individual basis.

In this case, ordinance no. 86 provides that defendant's township board shall determine whether a permit will be issued at a regular or special meeting of the board, thus giving plaintiff an opportunity to appear before and present its side to the board.[7] This provision satisfies due process requirements. Ordinance no. 86 requires that a permit applicant submit a detailed list of specified information, and that defendant's board must review this information.[8] Concerning the amount of a surety bond, ordinance no. 86 provides as follows:

[7] Ordinance no. 86, § 4(C).
[8] Ordinance no. 86, § 4(A) and (C).

> In fixing the amount of such surety bond, the Township Board shall take into account the size and scope of the proposed quarry, probable cost of rehabilitating the premises upon default of the operator, estimated expenses to compel the operator to comply by Court decree, and such other factors and conditions as might be relevant in determining the sum reasonable in the light of all facts and circumstances surrounding each application. [Ordinance no. 86, § 4(D)(2)(e).]

Moreover, ordinance no. 86 provides that soil removal permits "shall be renewed as herein provided for so long as the permittee complies with all of the provisions of this ordinance or other conditions of this permit."[9]

Thus, in construing plaintiff's challenged provisions with reference to the entire ordinance, we conclude that ordinance no. 86 does not confer unlimited discretion upon defendant's board in determining the amount of a surety bond or whether to issue or renew a soil removal license. Rather, ordinance no. 86 contains flexible standards that are as reasonably precise as the subject matter requires or permits. Accordingly, ordinance no. 86 does not represent an unconstitutional delegation of authority. *Whittaker & Gooding Co v Scio Twp,* 122 Mich App 538, 554-556; 332 NW2d 527 (1983); *Marathon Oil Co v Plymouth Twp,* 25 Mich App 399; 181 NW2d 668 (1970).

*Osius, supra,* is inapplicable to this case. As noted in *Florka v Detroit,* 369 Mich 568, 581-582; 120 NW2d 797 (1963), *Osius* concerned a legislative body's failure to delegate "any standards whatever" to an administrative body. To the extent *Orion Twp, supra,* holds differently, we disagree.

Affirmed.

---

[9] Ordinance no. 86 § 4(B).