*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

AFJN HOLDINGS LLC,

Plaintiff-Appellant,

v

CITY OF HIGHLAND PARK,

Defendant-Appellee.

UNPUBLISHED
February 06, 2026
10:14 AM

No. 372494
Wayne Circuit Court
LC No. 23-011172-CZ

Before: CAMERON, P.J., and M. J. KELLY and YOUNG, JJ.

PER CURIAM.

In this marijuana facility licensing matter, plaintiff, AFJN Holdings LLC ("AFJN"), appeals as of right the order denying its motions for summary disposition and sanctions and granting summary disposition in favor of defendant, the city of Highland Park ("Highland Park"). We affirm.

## I. FACTUAL AND PROCEDURAL HISTORY

AFJN is a Michigan-based limited-liability company and commercial real estate developer seeking to operate an adult-use marijuana retail facility (a "retail facility" or a "marijuana retail facility") in Highland Park. The Michigan Regulation and Taxation of Marihuana Act ("MRTMA"), MCL 333.27951 *et seq.* "control[s] the commercial production and distribution of marihuana under a system that licenses, regulates, and taxes the businesses involved." MCL 333.27952. "[A] municipality may completely prohibit or limit the number of marihuana establishments within its boundaries." MCL 333.27956(1). The cannabis regulatory agency ("CRA") "is responsible for implementing this act and has the powers and duties necessary to control the commercial production and distribution of marihuana." MCL 333.27957(1).

In response to the MRTMA, Highland Park "opt[ed] in" on November 18, 2019, and later approved Highland Park Ordinance No. 2020-003 ("the original ordinance") on October 5, 2020, "to authorize and regulate the establishment of medical marijuana facilities and adult use marijuana facilities." Section 3(b) of the original ordinance limited the maximum number of different types of marijuana facilities or marijuana establishments and only allowed a maximum of five recreational licenses for retail facilities in Highland Park. Highland Park Ordinance No. 2020-

003, § 3(b). Section 6(a) required each marijuana business "be licensed by [Highland Park]," with applications being submitted to the city clerk. Highland Park Ordinance No. 2020-003, § 6(a). On about April 20, 2023, AFJN applied to Highland Park to operate such a retail facility at 36 Victor Street, Highland Park, Michigan 48203 ("the property").

On August 1, 2023, the original ordinance was declared void and unenforceable because it did not "strictly comply with the requirements set forth under" the Michigan Zoning Enabling Act ("MZEA"), MCL 125.3101 *et seq. Davis v Highland Park*, unpublished order of the Wayne Circuit Court, entered August 1, 2023 (Case No. 23-005469-CZ), p 2. "[A]ny and all applications filed with the Defendants, as well as any and all application fees paid to the Defendants by any applicant in accordance with [the original ordinance][] shall be refunded and returned to the applicant." *Id.* Brenda Green, the city clerk of Highland Park, returned AFJN's application to operate a retail facility, and sought information where to send a refund for the application fee.

On August 7, 2023, the Highland Park City Council ("the city council") conducted the first reading of a proposed ordinance governing marijuana establishments, which would "prohibit all forms of recreational marihuana establishments" in Highland Park under the MRTMA. On August 12, 2023, AFJN applied for a certificate of occupancy to operate a new business at the property, which would involve the sale of recreational marijuana to adults. On August 21, 2023, Highland Park conducted a second and final reading of the proposed ordinance governing marijuana establishments. After the final reading, Highland Park passed and adopted Ordinance No. 2023-0001 ("the new ordinance"), which governed "Marihuana Establishments" and amended the Highland Park Administrative Code "by adding Chapter 1 to prohibit all forms of recreational marihuana establishments within the [c]ity of Highland Park." Highland Park Ordinance No. 2023-0001. Section 2 of the new ordinance stated, under "[S]ection 6.1 of the [MRTMA], the [c]ity [of Highland Park] completely prohibits any marihuana establishments as defined in the [MRTMA] from locating and operating within the boundaries of" Highland Park.[1] Highland Park Ordinance No. 2023-0001, § 2. The new ordinance was to take effect 15 days after enactment, or September 5, 2023, under Section 6-2(b) of Highland Park's City Charter ("the city charter").[2]

On August 22, 2023, Highland Park approved AFJN's application for a certificate of occupancy and issued a certificate of occupancy for the property. Frank Haywood, Highland Park's building official, signed the certificate of occupancy after completing an inspection "to ensure compliance with the applicable zoning and construction codes." When the certificate of occupancy was issued, "work was still being performed . . . and there were still open permits for construction" and the premises were "not suitable for business operation as of August 22, 2023."

---

[1] A "marihuana establishment" is "a marihuana grower, marihuana safety compliance facility, marihuana processor, marihuana microbusiness, marihuana retailer, marihuana secure transporter, or any other type of marihuana-related business licensed by the cannabis regulatory agency." MCL 333.27953(l).

[2] "All ordinances shall take effect fifteen days after the date of enactment unless otherwise provided therein." Highland Park Charter, § 6-2(b).

On August 24, 2023, the CRA stated it "received a complete application for a state license from [AFJN] indicating their marijuana establishment will be located in" Highland Park. The same letter served as notice to Highland Park about AFJN's application. AFJN was the applicant seeking to operate a "Marihuana Retailer" establishment. The letter stated: "If the proposed establishment above is not in compliance with an ordinance consistent with [S]ection 6 of the MRTMA, please immediately complete and return the enclosed Municipal Notification of Noncompliance form." On August 25, 2023, Cidia Wicker-Brown, the deputy city clerk of Highland Park, notified the CRA that Highland Park opted out of "[a]dult [m]arijuana" on August 21, 2023. Wicker-Brown stated the August 7, 2023 city council meeting minutes were posted on Highland Park's website on or about August 11, 2024, and "contain[ed] the complete language of [the new ordinance]." Further, the meeting minutes from the August 21, 2023 city council meeting were posted on Highland Park's website on or about August 25, 2023, and "contain[ed] the complete language of [the new ordinance] as adopted by the City Council."

Haywood stated the mechanical work at the property was finished on November 22, 2023, electrical work was completed on December 1, 2023, and the plumbing work was finished on March 20, 2024. On March 22, 2024, Haywood signed and issued "a new [c]ertificate of [o]ccupancy" for the property "after the last permit was closed out and [he] performed the final inspection of the premises." The March 22, 2024 certificate of occupancy "contains a stipulation that a business license is to be obtained from the City Clerk[.]" Green stated AFJN "has not submitted an application to obtain a business license to the City Clerk's Office." The new ordinance itself was published on Highland Park's website in April 2024.

AFJN filed a two-count complaint seeking (I) declaratory relief and (II) a writ of mandamus. AFJN moved for summary disposition under MCR 2.116(C)(10), arguing there was no genuine issue of material fact AFJN had a vested property right in a prior nonconforming use to operate a retail facility and the new ordinance was being applied retroactively and unlawfully interfered with this right ("motion for summary disposition regarding nonconforming use"). AFJN asserted Highland Park did not have an ordinance regulating adult-use marijuana retail facilities between August 1, 2023 and September 5, 2023, and Highland Park was "automatically opted in during this period." AFJN contended there was no genuine issue of material fact it was entitled to a writ of mandamus because it complied with local requirements and Highland Park was required to report this compliance to the CRA. Highland Park opposed the motion for summary disposition regarding nonconforming use.

AFJN also moved for summary disposition under MCR 2.116(C)(10), arguing there was no genuine issue of material fact that the new ordinance was inapplicable because Highland Park did not timely publish the new ordinance within seven days of enactment, as required under the city charter, because it was not published until April 2024 ("the motion for summary disposition regarding publication"). AFJN also moved for sanctions. Highland Park opposed the motion for summary disposition regarding publication, asserting the new ordinance was published properly when the meeting minutes from the August 21, 2023 city council meeting, which included the language of the new ordinance, were published to Highland Park's website on August 25, 2023. Highland Park opposed the motion for sanctions.

Highland Park moved for summary disposition under MCR 2.116(C)(8) and (C)(10), contending AFJN was not entitled to any of its requested relief because it did not possess a vested

property right in a prior nonconforming use ("Highland Park's motion for summary disposition"). Highland Park argued the certificate of occupancy was insufficient to establish any vested property right because (1) AFJN knew Highland Park was opting out of the MRTMA as of August 1, 2023, (2) AFJN did not complete work at the property, and (3) AFJN did not possess a business license for its retail facility. AFJN opposed Highland Park's motion for summary disposition, asserting the new ordinance was not timely published, the new ordinance was ineffective and there is no ordinance prohibiting AFJN from operating a retail facility, and AFJN had a vested property right in a prior nonconforming use to operate a retail facility when it obtained its August 22, 2023 certificate of occupancy.

The trial court held a hearing addressing all three dispositive motions. Addressing the publication issue, the trial court determined the new ordinance was properly adopted and enacted under the city charter and denied the motion for summary disposition regarding publication. The trial court noted the "exact ordinance language was included in the meeting minutes" after the city council meetings on August 7, 2023 and August 21, 2023. The meeting minutes from both meetings "were published" to Highland Park's website "within seven days[.]" The trial court found Highland Park complied with Section 2.2(c) of the city charter, noting Highland Park was not required to enumerate the new ordinance for it to be effective.

Next, the trial court concluded the new ordinance was a regulatory ordinance, AFJN "cannot have a non[]conforming vested interest in the property," and denied the motion for summary disposition regarding nonconforming use. The trial court continued:

> The [trial court] does find that the [new] ordinance prohibiting the operating of a marijuana establishment as constituting a regulation on activities as opposed to land usage. Further, the [new] ordinance regulating the operating of a marijuana establishment does not regulate it according to particular districts, areas, or location. It is a sweeping regulation that encompasses the entire city.
>
> Further, as [Highland Park] has indicated, this property is zoned as a commercial property. It is still a commercial property. And a [certificate of occupancy] was issued permitting a commercial use. The regulation adopted by Highland Park does not permit a marijuana business on this commercial property or any commercial property within Highland Park.
>
> Accordingly, the Court finds that this is a regulatory ordinance.
>
> Therefore, [AFJN] cannot have a non[]conforming vested interest in the property. . . .

The trial court noted, in the event the new ordinance is a zoning ordinance, it must decide "whether [AFJN] ha[s] a vested interest." The trial court stated the August 22, 2023 certificate of occupancy was only "good for a certain period of time and good until there are no further modifications or changes." The trial court concluded AFJN was not entitled to a writ of mandamus. The trial court explained:

[T]he facts do indicate that additional work continued long after [AFJN] w[as] aware of the laws completing changing the use of marijuana within [Highland Park.]

The final permits were not granted until March of 2024 for additional work to electrical, plumbing and mechanical work. [The trial court] finds that it's difficult to argue a vested interest when [AFJN] w[as] aware within seven days of [August 1, 2023,] that Highland Park completely eliminated marijuana from its city boundaries. And they could not have been reliant on a [certificate of occupancy] and the furtherance of continued work with this full knowledge of the declaration that Highland Park would no longer grant marijuana licenses. . . .

So I find that . . . it's a regulatory use. Secondly, if it is a zoning use, there is no documentation as to any substantial change in the character of the building. And most significantly, [AFJN] w[as] on notice early on in this case as to the inability to obtain any license whatsoever for marijuana use. They never obtained a building permit. And they never reissued or re[]sought a second marijuana application. Their first application was returned to them.

The trial court entered an order denying both of AFJN's motions for summary disposition and its motion for sanctions and granting Highland Park's motion for summary disposition. AFJN now appeals.

## II. ANALYSIS

### A. STANDARDS OF REVIEW

This Court "review[s] de novo a trial court's decision on a motion for summary disposition." *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 159; 934 NW2d 665 (2019). Because the trial court considered documentary evidence outside of the pleadings, this Court reviews the motion under the standard of review for a motion under MCR 2.116(C)(10). *Cuddington v United Health Servs, Inc*, 298 Mich App 264, 270; 826 NW2d 519 (2012). A motion for summary disposition under MCR 2.116(C)(10) "tests the *factual sufficiency* of a claim." *El-Khalil*, 504 Mich at 160. A motion under MCR 2.116(C)(10) may only be granted when there is no genuine issue of material fact. *Id*. (quotation marks and citations omitted).

"Statutory interpretation is a question of law, which this Court also reviews de novo." *O'Neal v St John Hosp & Med Ctr*, 487 Mich 485, 493; 791 NW2d 853 (2010). This Court also reviews de novo the proper interpretation and application of Highland Park's ordinances, *Gmoser's Septic Serv, LLC v East Bay Charter Twp*, 299 Mich App 504, 509; 831 NW2d 881 (2013), and city charter, *Barrow v Detroit Election Comm'n*, 301 Mich App 404, 411; 836 NW2d 498 (2013). Whether an ordinance was "properly adopted and published is a question of law that is reviewed de novo on appeal." *Ewing v Detroit*, 237 Mich App 696, 698; 604 NW2d 787 (1999).

Further, "in a mandamus action this Court reviews de novo as questions of law whether a defendant has a clear legal duty to perform and whether a plaintiff has a clear legal right to performance." *Barrow*, 301 Mich App at 411. "[B]ecause mandamus is a discretionary writ, we review for an abuse of discretion a trial court's decision regarding whether to grant mandamus

-5-

relief." *Berry v Garrett*, 316 Mich App 37, 41; 890 NW2d 882 (2016) (quotation marks and citations omitted).

### B.  HIGHLAND PARK TIMELY PUBLISHED THE NEW ORDINANCE

AFJN argues the trial court erred in determining the new ordinance was published under the requirements of the city charter and denying the motion for summary disposition regarding publication.  We disagree.

Publication is "essential to the validity of ordinances" when a city charter provides "that the ordinance should not take effect until after publication."  *Vernakes v South Haven*, 186 Mich 595, 597-598; 152 NW 919 (1915).  Highland Park's city charter states: "All ordinances shall take effect fifteen days after the date of enactment unless otherwise provided therein."  Highland Park Charter, § 6-2(b).  Section 6-4 of the city charter has a publication requirement, which states:

> (a) Within seven days after the enactment of an ordinance, the same shall be numbered for identification and shall be published by one of the methods, set forth in Section 2-2(c), which is determined by City Council.
>
> (b) Each ordinance or a summary thereof shall be published before it takes effect.  MCL 117.3(k).  [Highland Park Charter, § 6-4.]

MCL 117.3(k) governs publication of an ordinance and states:

> Whether or not provided in its charter, instead of publishing a true copy of an ordinance before it becomes operative, the city may publish a summary of the ordinance.  If the city publishes a summary of the ordinance, the city shall include in the publication the designation of a location in the city where a true copy of the ordinance can be inspected or obtained.

Further, Section 2-2(c) of the city charter governs publication and states:

> (c) Publish and Publication.
>
> (i) Unless as otherwise required by law, the requirement contained in this Charter for the publishing or publication of notices, ordinances or proceedings of City Council or other city boards, commissions or authorities, shall be met by publishing in one of the following manners:
>
> (A) At least once in a newspaper published in the English language for news of general character, with general circulation at regular intervals in the city for at least one (1) year immediately prior to the publication of the notice, or
>
> (B) By posting in at least three (3) conspicuous places within the city, or
>
> (C) By posting on the City's website, cable site and/or the Internet.

(ii) Prima facie evidence of such publication shall be in the form of an affidavit of the printer or publisher of the newspaper, or the foreman or principal clerk attached to a copy of the notice.

(iii) In the case in which the Charter requires or permits the mailing or posting of notices around the city or on the internet, the affidavit of the officer or employee responsible for such mailing or posting, that such notice was mailed or posted shall be prima facie evidence of such mailing or posting. [Highland Park Charter, § 2-2(c) (quotation marks omitted).]

The record established, in response to the MRTMA, Highland Park approved the original ordinance, which allowed a maximum of five recreational licenses for retail facilities in Highland Park under Section 3(b). Highland Park Ordinance 2020-003, § 3(b). However, on August 1, 2023, the original ordinance was declared void and unenforceable because it did not "strictly comply" with the MZEA. *Davis v Highland Park*, unpub order at 2. On August 7, 2023, the city council conducted the first reading of the new ordinance, which would "prohibit all forms of recreational marihuana establishments" in Highland Park under the MRTMA. The August 7, 2023 city council meeting minutes were posted on Highland Park's website on or about August 11, 2024, and "contain[ed] the complete language of [the new ordinance]." On August 21, 2023, the city council conducted a second and final reading of the new ordinance, which would constitute Highland Park's "opt[ing] out" of the MRTMA. After the final reading, the new ordinance was adopted by the city council. Section 2 of the new ordinance prohibited "all forms of recreational marihuana establishments" in Highland Park. Highland Park Ordinance 2023-0001, § 2. The meeting minutes from the August 21, 2023 city council meeting were posted on Highland Park's website on or about August 25, 2023, and "contain[ed] the complete language of [the new ordinance] as adopted by the City Council." The new ordinance took effect on September 5, 2023.

It is undisputed that the city charter required publication of the new ordinance and that the actual text of the new ordinance itself was not published on Highland Park's website until April 2024. On appeal, AFJN contends the publication requirement was therefore not met because the text of the new ordinance itself was not published within seven days and the August 21, 2023 meeting minutes were insufficient to satisfy the publication requirement under the city charter. However, the August 21, 2023 meeting minutes contain the same language as the new ordinance almost verbatim. As noted, these meeting minutes were published on Highland Park's website on or about August 25, 2023. Wicker-Brown stated these meeting minutes "contain[ed] the complete language of [the new ordinance] as adopted by the City Council." The publication of the August 21, 2023 meeting minutes on August 25, 2023, was within seven days of the enactment of the new ordinance. Critically, although the meeting minutes did not constitute the new ordinance itself, it constitutes "a summary thereof," which is allowed to be published instead of the new ordinance under Section 6-4(b) of the city charter. Highland Park Charter, § 6-4(b). Worth noting, the August 21, 2023 meeting minutes contained more than a mere summary. The posting of the meeting minutes on Highland Park's website was an allowable manner of publication under Section 2-2(c)(i)(C). Highland Park Charter, § 2-2(c)(i)(C).

AFJN's argument that the new ordinance was not enumerated in the August 21, 2023 meeting minutes is unpersuasive. The new ordinance itself is numbered for identification as required under Section 6-4(a) of the city charter. Highland Park Charter, § 6-4(a). However, there

is no language requiring the summary to also contain such identification. As Highland Park notes on appeal, Section 6-4(b) of the city charter only requires publication of "[e]ach ordinance or a summary thereof . . . before it takes effect." Highland Park Charter, § 6-4(b). While Section 6-4(a) of the city charter states an ordinance "shall be numbered for identification," it is not apparent this is a requirement for an ordinance to be effective. Highland Park Charter, § 6-4(a).

AFJN's reliance on *People v Poyma*, 91 Mich App 238; 283 NW2d 707 (1979), is misplaced. In this criminal case, the defendant "was convicted of driving under the influence of intoxicating liquor, a violation of City of South Lyon's ordinance No. 94, ch. 5, s 5.15." *Id*. at 240. South Lyon's ordinance "contain[ed] very little substance" and adopted "by reference, the entire Uniform Traffic Code, without setting forth all the ordinances contained in that code." *Id*. at 240-241. "The adopting ordinance was never published in full in any newspaper." *Id*. at 241. In *Poyma*, publication of the full ordinance was required under state law and South Lyon's city charter. *Id*. at 241-243. This Court concluded:

> [I]t is clear that [the] plaintiff's failure to publish the adopting ordinance violated the requirements of the ordinance and city charter, as well as the requirements of [MCL] s 257.952; [MSA] s 9.2652. Both the charter and the adopting ordinance clearly indicate that the publication of the adopting ordinance is a prerequisite to the legal effectiveness of the code being adopted. [*Poyma*, 91 Mich App at 244.]

This Court "conclude[d] that the circuit court judge properly concluded that the ordinance under which [the] defendant had been convicted was invalid for lack of publication of the adopting ordinance." *Id*. at 245. This Court also stated: "Nor does the [caselaw] of this state support a 'substantial compliance' standard for publication. To the contrary, the prior opinions in this area tend to adhere to a policy of strict compliance with publication requirements." *Id*. at 244.

For the reasons stated, the facts in this case are distinguishable from those in *Poyma* because the summary of the new ordinance contained in the August 21, 2023 meeting minutes complied with the city charter and state law when it was published on Highland Park's website within seven days of enactment. Stated differently, Highland Park did not merely substantially comply with the city charter and statutory law but rather timely published the summary of the new ordinance.

## C. THE TRIAL COURT DID NOT ERR IN HOLDING THAT THE NEW ORDINANCE IS NOT A ZONING ORDINANCE, THAT AFJN CANNOT POSSESS A VESTED PROPERTY RIGHT IN A PRIOR NONCONFORMING USE TO OPERATE THE MARIJUANA FACILITY, AND THAT THERE WAS NO UNLAWFUL RETROACTIVE APPLICATION OF THE NEW ORDINANCE

AFJN contends the trial court erred in granting Highland Park's motion for summary disposition and denying the motion for summary disposition regarding nonconforming use. We disagree.

Before addressing any potential vested property right in a prior nonconforming use and whether the new ordinance was applied retroactively, this Court must address whether the new ordinance was a zoning ordinance in the first place. "The zoning of land is a reasonable exercise

-8-

of government police power." *Paragon Props Co v City of Novi*, 452 Mich 568, 573; 550 NW2d 772 (1996). "[Z]oning ordinances regulate the use of land and buildings according to districts, areas, or locations[.]" *Frericks v Highland Twp*, 228 Mich App 575, 608; 579 NW2d 441 (1998), citing *Natural Aggregates Corp v Brighton Twp*, 213 Mich App 287, 298; 539 NW2d 761 (1995).

> Whether a particular ordinance is a zoning ordinance may be determined by considering the substance of its provisions and terms, and its relation to the general plan of zoning in the city. The distinction between zoning and regulatory ordinances cannot be predicated on whether the purpose of the ordinance is to promote the public good, since both may have as their purpose the public good. [*Natural Aggregates Corp*, 213 Mich App at 298-299 (citations omitted).]

In *Square Lake Hills Condo Ass'n v Bloomfield Twp*, 437 Mich 310, 313; 471 NW2d 321 (1991), our Supreme Court considered whether a township had "the authority to regulate by ordinance boat docking and launching[.]" One of the ordinances at issue, Ordinance No. 397, "limited township riparian property owners, with a minimum of 150 feet of lake frontage, to launching and docking one motor boat." *Id*. at 315. Our Supreme Court determined this ordinance was not a zoning ordinance, as asserted by the plaintiff, because it "does not regulate the use of land or lake frontage" but, instead, "regulates an 'activity' by limiting the number of boats that can be parked or 'launched and/or docked adjacent to each separate frontage.' " *Id*. at 323. Our Supreme Court continued: "[A] township regulation of docking and launching boats on its inland lake is within the . . . scope of regulatory police power." *Id*. at 325. In *Recreational Vehicle United Citizens Ass'n v Sterling Hts*, 165 Mich App 130, 136; 418 NW2d 702 (1987), this Court held an ordinance regulating "the parking of vehicles on [the] defendant's streets or sidewalks" was a regulatory ordinance and not a zoning ordinance.

Here, there was no provision in the new ordinance addressing the zoning of any area within Highland Park. The record indicates the zoning of the property was "IRD." Solely for information purposes, it is noted that Chapter 1250.11 of Highland Park's Zoning Ordinance states an IRD is an "Industrial, Research[,] [and] Development District," which is "designed to allow for medium to large-scale production, warehousing, manufacturing, research laboratory, product development or other similar uses that require significant volumes of truck or rail freight traffic[.] . . ." Highland Park Zoning Ordinance, Ch 1250.11.[3] Highland Park asserts it is undisputed the property is "located in a district zoned for commercial use." Regardless of zoning classifications of the property, the language of the new ordinance is dispositive in resolving this issue. In its preamble, the new ordinance's purpose was to "amend the Highland Park Administrative Code, by adding Chapter 1 to prohibit all forms of recreational marihuana establishments within the [c]ity of Highland Park." Highland Park Ordinance No. 2023-0001.

The new ordinance included only two sections. Section 1 governed the title of the new ordinance, stating it "shall be known and cited as the City of Highland Park Marihuana Establishments Ordinance." Highland Park Ordinance No. 2023-0001, § 1. Section 2 governed "marihuana establishments," providing: "As permitted in [S]ection 6.1 of the [MRTMA], the City

---

[3] Highland Park's Zoning Ordinance was not included in the lower court record and this information is included solely for context and to explain the zoning abbreviation, "IRD."

hereby completely prohibits any marihuana establishments as defined in the Act from locating and operating within the boundaries of the City." Highland Park Ordinance No. 2023-0001, § 2. The MRTMA defines a "marihuana establishment" as "a marihuana grower, marihuana safety compliance facility, marihuana processor, marihuana microbusiness, marihuana retailer, marihuana secure transporter, or any other type of marihuana-related business licensed by the [CRA]." MCL 333.27953(l). Under MCL 333.27956, "a municipality may completely prohibit or limit the number of marihuana establishments within its boundaries." The language of the new ordinance does not "regulate the use of land and buildings according to districts, areas, or locations[.]" See *Frericks*, 228 Mich App at 608, citing *Natural Aggregates Corp*, 213 Mich App at 298. Considering the provisions, the new ordinance regulates an activity, namely the establishment of any marijuana facility, across the entire city of Highland Park; it did not amend anything regarding how any area is zoned. See *Natural Aggregates Corp*, 213 Mich App at 298-299. In accordance with our Supreme Court's conclusion that "[l]aunching and docking boats on inland lakes are 'activities,' " and the "regulation of docking and launching boats . . . is within the . . . scope of regulatory power," see *Square Lake Hills Condo Ass'n*, 437 Mich at 324-325, similarly, the new ordinance regulates an activity by prohibiting any marijuana establishments in Highland Park.

AFJN's reliance on *Natural Aggregates Corp*, 213 Mich App at 301, for the proposition the new ordinance cannot be regulatory in nature because it prohibited a land use, is inapposite. In that case, the ordinance at issue was Ordinance No. 86, which "generally required a yearly permit for quarrying, mining, or removing soil, sand, gravel, and similar material from township land." *Id*. at 290. The ordinance "also required that a reclamation plan be filed with a soil removal permit application and that a surety bond be obtained," and "a separate permit and surety bond for bringing off-site fill material onto township property." *Id*. at 290-291. This Court concluded "the applicability of the permit requirement under ordinance no. 86 does not depend upon a zoning or districting scheme, but rather depends upon the amount of soil, sand, gravel, and so forth, to be removed from a site." *Id*. at 300. Further, "[O]rdinance [N]o. 86 does not provide whether soil, sand, gravel, and so forth, may be removed from township land" and "does not regulate the use of land." *Id*. at 300-301. This Court continued: "Rather, as relevant to [the] plaintiff, ordinance no. 86 generally provides that where such material is removed, this 'activity' must be conducted pursuant to certain regulations, i.e., the one removing the material must obtain a permit, file a land reclamation plan, and obtain a surety bond." *Id*. at 301. AFJN's assertion this case is dissimilar from *Natural Aggregates Corp* solely because the new ordinance prohibited all marijuana establishments is unsupported. Regardless of whether there is a general prohibition or a permitting process, the new ordinance and Ordinance No. 86 in *Natural Aggregates Corp* both regulated activities and not land use.

Michigan caselaw does not support that a property owner may possess a vested right in a prior nonconforming use regarding a regulatory ordinance. See *Norton Shores v Carr*, 81 Mich App 715, 724; 265 NW2d 802 (1978) ("While a preexisting nonconforming use may exist despite a zoning ordinance, a regulatory ordinance envisions no similar exceptions. A use, albeit nonconforming, is still subject to regulatory ordinances. . . . A regulatory ordinance is not encumbered by a nonconforming use provision."). The MZEA also governs nonconforming uses. MCL 125.3208(1) (emphasis added) states: "If the use . . . of the land is lawful at the time of *enactment of a zoning ordinance or an amendment to a zoning ordinance*, then that use may be continued although the use does not conform to *the zoning ordinance or amendment*." Because

-10-

the new ordinance was a regulatory ordinance, AFJN's arguments regarding possession of a vested property right in a prior nonconforming use and the retroactive application of the new ordinance are rendered meritless. In any event, AFJN's assertion that it possessed a vested property right in a prior nonconforming use to operate an adult use marijuana retail facility when it was issued a certificate of occupancy is meritless, and the argument Highland Park was automatically opted in to the MRTMA from August 1, 2023 until September 5, 2023, is unpersuasive.

III. CONCLUSION

The trial court did not err by denying AFJN's motion for summary disposition regarding publication and motion for sanctions because the new ordinance was not void for lack of publication or enumeration. The trial court did not err by denying AFJN's motion for summary disposition regarding nonconforming use and granting Highland Park's motion for summary disposition when the new ordinance is not a zoning ordinance, AFJN cannot possess a vested property right in a prior nonconforming use to operate an adult use marijuana retail facility in Highland Park, and there was no unlawful retroactive application of the new ordinance. Consequently, the trial court did not err in granting summary disposition in favor of Highland Park.

Affirmed.

/s/ Thomas C. Cameron
/s/ Michael J. Kelly
/s/ Adrienne N. Young