*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

1864 US-23 LLC,

       Plaintiff,

v

CITY OF PORT HURON,

       Defendant-Appellee,

and

OX TAIL INC., EXHIBIT CANNABIS LLC, and
GREEN STANDARD CULTIVATION LLC,

       Intervenors-Appellees,

and

ATTITUDE WELLNESS LLC, TRUCENTA LLC,
PROGRESS FOR MICHIGAN 2020, GREEN
BRONCO II, GREENLAND MEDS LLC, DNVK5
LLC, BLUE WATER CANNA LLC, HURON
BOTANICAL LLC, JARS HOLDINGS LLC, FARM
SCIENCE LLC, MARK ABRAHAM, and
REVOLUTION STRAINS,

       Intervenors,

and

BRT CAPITAL 3 LLC,

       Intervenor-Appellant.

UNPUBLISHED
August 29, 2024

No. 364708
St. Clair Circuit Court
LC No. 21-000282-CZ

BRT CAPITAL 3 LLC,

Plaintiff-Appellant,

v                                                     No.   364715
                                                      St. Clair Circuit Court
CITY OF PORT HURON,                                   LC No.   21-000920-CZ

       Defendant-Appellee,

and

ATTITUDE WELLNESS LLC,

       Intervenor.

---

1864 US-23 LLC,

       Plaintiff,

v                                                     No.   365006
                                                      St. Clair Circuit Court
CITY OF PORT HURON,                                   LC No.   21-000282-CZ

       Defendant-Appellee,

and

OX TAIL INC, PROGRESS FOR MICHIGAN 2020,
EXHIBIT CANNABIS LLC, GREEN STANDARD
CULTIVATION LLC, and REVOLUTION
STRAINS,

       Intervenors-Appellees,

and

ATTITUDE WELLNESS LLC, BRT CAPITAL 3
LLC, GREEN BRONCO II, GREENLAND MEDS
LLC, DNVK5 LLC, BLUE WATER CANNA LLC,
HURON BOTANICAL LLC, JARS HOLDINGS
LLC, FARM SCIENCE LLC, and MARK
ABRAHAM,

       Intervenors,

and

TRUCENTA LLC,

        Intervenor-Appellant.

_____

1864 US-23 LLC,

        Plaintiff-Appellant,

v

CITY OF PORT HURON,

        Defendant-Appellee,

and

OX TAIL INC, PROGRESS FOR MICHIGAN 2020,
EXHIBIT CANNABIS LLC, BRT CAPITAL 3 LLC,
and GREEN STANDARD CULTIVATION LLC,

        Intervenors-Appellees,

and

ATTITUDE WELLNESS LLC, TRUCENTA LLC,
GREEN BRONCO II, GREENLAND MEDS LLC,
DNVK5 LLC, BLUE WATER CANNA LLC,
HURON BOTANICAL LLC, JARS HOLDINGS
LLC, FARM SCIENCE LLC, MARK ABRAHAM,
and REVOLUTION STRAINS,

        Intervenors.

No.   365021
St. Clair Circuit Court
LC No.   21-000282-CZ

_____

1864 US-23 LLC,

        Plaintiff,

v

CITY OF PORT HURON,

        Defendant-Appellee,

No.   365088
St. Clair Circuit Court
LC Nos.   21-000282-CK; 21-
        000647-CZ

_____

-3-

and

OX TAIL INC, and GREEN STANDARD
CULTIVATION LLC,

                Intervenors-Appellees,

and

ATTITUDE WELLNESS LLC, TRUCENTA LLC,
PROGRESS FOR MICHIGAN 2020, EXHIBIT
CANNABIS LLC, BRT CAPITAL 3 LLC, GREEN
BRONCO II, GREENLAND MEDS LLC, DNVK5
LLC, BLUE WATER CANNA LLC, HURON
BOTANICAL LLC, FARM SCIENCE LLC, MARK
ABRAHAM, and REVOLUTION STRAINS,

                Intervenors,

and

JARS HOLDINGS LLC,

                Intervenor-Appellant.

Before: RIORDAN, P.J., and RICK and N.P. HOOD, JJ.

PER CURIAM.

In these consolidated appeals,[1] in Docket Nos. 364708 and 364715, intervenor BRT Capital 3, LLC ("BRT"), appeals as of right the trial court's January 27, 2023 order granting various motions for summary disposition filed by defendant City of Port Huron ("Port Huron") and several intervening parties, and denying BRT's motion to file a second amended complaint. In Docket No. 365006, intervenor Trucenta, LLC ("Trucenta"), appeals as of right the same order granting the motions for summary disposition, and denying Trucenta's motion to file a second amended complaint. In Docket No. 365021, plaintiff 1864 US-23, LLC ("1864"), appeals as of right the same order. In Docket No. 365088, plaintiff-intervenor JARS Holdings, LLC ("JARS"), appeals as of right the same order. We affirm on all.

---

[1] *1864 US-23, LLC v City of Port Huron*, unpublished order of the Court of Appeals, entered June 6, 2023 (Docket Nos. 364708; 364715; 365006; 365021 & 365088).

# I. FACTS

In November 2020, voters in Port Huron approved a ballot initiative,[2] hereinafter referred to as the "ordinance," generally providing that Port Huron should grant seven licenses for "marihuana retailer[s]," as well as several additional licenses for provisioning centers and designated consumption establishments under the Michigan Regulation and Taxation of Marihuana Act (MRTMA), MCL 333.27951 *et seq.*, and the Medical Marihuana Facilities Licensing Act (MMFLA), MCL 333.27101 *et seq*. See Port Huron Ordinances, § 12-604. The ordinance also provided a detailed scheme for considering and awarding license applications.[3]

Shortly after the initiative was approved, Port Huron accepted applications and awarded various licenses to Portage Acquisitions, Inc. ("Portage"), Revolution Strains, Inc. ("Revolution"), Ox Tail, Inc. ("Ox Tail"), The Exhibit Cannabis Co. ("The Exhibit"), and Green Standard Cultivation ("Green Standard"). Because there were more applicants than available licenses, and the appellants were not granted licenses through the competitive process, this litigation followed.

In February 2021, 1864 sued Port Huron, alleging that Port Huron wrongfully denied its application to be a provisioning center and marijuana retailer. In its complaint, 1864 explained that it intended to operate its marijuana facility at a location that was previously used as a gas station. The gas station itself apparently remained on the proposed site, but 1864 intended to remove the entire gas-station structure and replace it with a new structure exceeding 2,000 square feet in size. 1864 further contended that Port Huron Ordinances, § 12-607, provides that 10 points shall be awarded to an applicant when "the business facility address contains a minimum of 2,000 square feet." See Port Huron Ordinances, § 12-607(f)(5) and (i)(5). 1864 alleged that it received an application score of 90 out of 100, and it only failed to receive a perfect 100 score because Port Huron wrongfully determined that it failed to satisfy the 2,000 square-foot requirement. According to 1864, Port Huron should have counted not only the square footage of the enclosed gas-station retail structure, but also the square footage of the exposed gas-station canopy, which would have totaled over 2,000 square feet. 1864 alternatively argued that Port Huron should have counted the square footage of the structure that it intended to build, which would exceed 2,000 square feet, not the square footage measurement to that of the existing structure. Alternatively, 1864 argued that the 2,000 square-foot requirement violates the MRTMA, which significantly limits the authority of a municipality to regulate marijuana facilities. In total, 1864 brought seven claims against Port Huron, and it asked the trial court to "[s]et aside [Port Huron's] scoring and awarding of licenses to all applicants," and order Port Huron to award 1864 a perfect 100 score.

Eventually, the other parties to this consolidated appeal intervened. Relevant here, JARS, another unsuccessful applicant, apparently intervened in about May 2021.[4] Also in May 2021,

---

[2] The initiative was drafted by Progress for Michigan 2020 ("Progress").

[3] For the purposes of this case, we collectively refer to the various forms of marijuana-related businesses as "marijuana facilities."

[4] We cannot locate any particular intervening complaint or motion in the record filed by JARS at about this time, nor can we identify such a document in the register of actions. However, we note

Trucenta, another unsuccessful applicant, filed a complaint against Port Huron, alleging that the ordinance violates the MRTMA and that the licensing process was otherwise unlawful. In October 2021, Trucenta filed an amended complaint, similarly alleging that the ordinance violates the MRTMA and that the licensing process was otherwise unlawful. In relevant part, Trucenta asserted that the ordinance violates the Michigan Zoning Enabling Act (MZEA), MCL 125.3101 *et seq.*, because zoning ordinances cannot be enacted by initiative. Further, in October 2021, BRT, yet another unsuccessful applicant, filed an amended complaint against Port Huron, essentially alleging that the ordinance violates the MRTMA for several reasons.

Ultimately, 18 parties became involved in this litigation, with the unsuccessful applicants arguing that the ordinance or the licensing process, or both, should be set aside with, of course, the successful applicants and Port Huron arguing otherwise. During the course of discovery, the parties learned that Sam Pernick ("Pernick"), the individual who organized Progress and was responsible for drafting the ordinance as enacted, was more involved in the underlying decision-making process than previously thought.

In particular per the appellants, Pernick had an "alter-ego" business, SPNR3, that contracted with Portage to obtain licenses for marijuana facilities. Under the contract, Portage would apply for various licenses from Port Huron, and then promptly transfer any licenses that it received from Port Huron to SPNR3.[5] Port Huron had no knowledge of this arrangement when it considered and awarded the various licenses.

Once the appellants learned about this arrangement, some of them moved to file amended complaints adding Pernick, Portage, and SPNR3 to the case on the basis of various claims such as civil conspiracy. In addition, the movants also sought to add mandamus claims against the Port Huron City Clerk, asking her to revoke the licenses issued to Portage. Relevant for these appeals, BRT filed its motion to file a second amended complaint in April 2022, and Trucenta filed its motion to file a second amended complaint in November 2022.

Meanwhile, several other parties, including Port Huron, moved for summary disposition of all of appellants' claims challenging the ordinance and the application process. On January 6, 2023, the trial court issued a detailed 19-page opinion granting the motions for summary disposition. Relevant for these appeals, the trial court declined to consider the allegations regarding Pernick, Portage, and SPNR3 because the complaints before the court at that time "do not make these specific allegations," and the court "has not yet heard or considered" the respective motions to file amended complaints. In addition, the trial court ruled that the ordinance is consistent with state law and that the other numerous claims raised by the parties are meritless.

Some of the appellants then filed objections to the proposed order prepared by Port Huron regarding summary disposition in its favor. In relevant part, they argued that the trial court had

_____

that beginning in about May 2021, JARS was listed as one of the parties in this case in some of the documents filed by other parties.

[5] Allegedly, the reason for this contractual arrangement was the fact that Portage satisfied more of the applicant requirements than SPNR3.

not yet ruled upon the respective motions to amend the complaints or the underlying allegations regarding Pernick, Portage, and SPNR3, so the case could not be concluded at that point.

On January 27, 2023, the trial court held a hearing on these objections. At the hearing, counsel for JARS argued that the trial court should grant the respective motions to amend the complaints, but it acknowledged that "[t]here's nothing precluding us from filing a separate action against those Defendants involving those new claims." Counsel for Trucenta, however, contended that the instant action is appropriate for considering the new claims because Port Huron could raise res judicata as a defense in a separate action. The trial court responded to counsel as follows:

> Well, my concern is this, this began as a motion for the Court to issue an Injunction. Okay. And now it is parties are proposing that it blossom into something else, which – and the question before the Court is, is that really appropriate? Okay. I mean, this – we can – this lawsuit cannot last – this lawsuit, which, which is a request for an Injunction. And then there were all these intervening parties and all of their positions. I mean, do we want this lawsuit to last forever? I mean, if there was – and not only that, the majority – these, these were noticed very, these were noticed very, very late. Most of them were filed very, very late. Most of the motions for this to amend the Complaint.

> I mean, lawsuits cannot last forever. And somewhere, somehow this particular action needs to end. It was filed in 2021. We're now in 2023. That's, that's one of my primary concerns here. This cannot last forever simply because people do not like the City's decisions. Now, there is no evidence whatsoever that the City knew anything about the involvement of these other parties who are alleged to have been involved in these Proposed Amended Complaints.

> * * *

> Okay. Let me – I think most of you have gleaned what my concerns are and what my thoughts are. These matters can be brought against other parties in a separate lawsuit. Okay. It is not necessary, nor is it appropriate to bring these issues into this lawsuit. Somewhere, somehow there has to be a practical decision made. . . . I suppose in a perfect world, these would have been scheduled for hearing earlier in a – because amendment of a Complaint is something that should be done promptly, not at the close of discovery. Okay, but it wasn't done. And then the Court was inundated with Motions to Amend the Complaint at the last minute, I might add.

> But again, this originated as a Motion for an Injunction. And that – and the issue before the Court was the permanency of that initially. And then there were many other issues that needed to be addressed as reflected in the Court's Order. But the Court will cut to the chase scene on this right now.

> The Court is denying all Motions to Amend the Complaint. . . .

The same day, the trial court entered an order providing that the various motions for summary disposition filed by Port Huron relating to some of the other intervenors were granted,

declaring that the ordinance was valid and properly administered by Port Huron, and denying the respective motions to amend the complaints.

These appeals followed.

## II. STANDARD OF REVIEW

The trial court granted the motions for summary disposition under both MCR 2.116(C)(8) and (C)(10). Thus, we review the trial court's decision under the standards applicable to MCR 2.116(C)(10). See *Cuddington v United Health Servs, Inc*, 298 Mich App 264, 270; 826 NW2d 519 (2012).

> A motion under MCR 2.116(C)(10) tests the factual sufficiency of the complaint. In evaluating a motion for summary disposition brought under this subsection, a trial court considers affidavits, pleadings, depositions, admissions, and other evidence submitted by the parties, MCR 2.116(G)(5), in the light most favorable to the party opposing the motion. Where the proffered evidence fails to establish a genuine issue regarding any material fact, the moving party is entitled to judgment as a matter of law. [*Maiden v Rozwood*, 461 Mich 109, 120; 597 NW2d 817 (1999).]

"This Court reviews the grant or denial of summary disposition de novo to determine if the moving party is entitled to judgment as a matter of law." *Id*. at 118.

"We review for an abuse of discretion a circuit court's decision to grant or deny leave to amend a pleading[.]" *Boylan v Fifty Eight LLC*, 289 Mich App 709, 727; 808 NW2d 277 (2010). "A court does not abuse its discretion if it selects an outcome falling within the range of reasonable and principled outcomes." *Id*.

"Ordinances are treated as statutes for the purposes of interpretation and review." *Great Lakes Soc v Georgetown Charter Twp*, 281 Mich App 396, 407; 761 NW2d 371 (2008). "Hence, the interpretation and application of a municipal ordinance presents a question of law, which this Court reviews de novo." *Id*.

## III. DOCKET NOS. 364708 AND 364715

In Docket Nos. 364708 and 364715, BRT argues that the trial court abused its discretion when it denied BRT's motion to file a second amended complaint. BRT contends that the trial court did not identify a sufficient reason for denying the motion, and the proposed amendment was not futile. We disagree.[6]

---

[6] The various appellants in this case discuss the law regarding leave to file amended complaints. However, as the proposed amended complaints would have added parties to the litigation, additional court rules and principles of law may be invoked. See, e.g., *Hofmann v Auto Club Ins Ass'n*, 211 Mich App 55, 95-97; 535 NW2d 529 (1995) (discussing joinder of parties).

MCR 2.118(A)(2) generally provides that "a party may amend a pleading only by leave of the court or by written consent of the adverse party. Leave shall be freely given when justice so requires."

"[T]he trial court must make findings regarding whether justice is served by the amendment." *PT Today, Inc v Comm'r of Office of Fin & Ins Servs*, 270 Mich App 110, 142; 715 NW2d 398 (2006). "[A] motion to amend should ordinarily be denied only for particularized reasons, including undue delay, bad faith or a dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party, or futility." *Id*. at 143. "An amendment would be futile if (1) ignoring the substantive merits of the claim, it is legally insufficient on its face; (2) it merely restates allegations already made; or (3) it adds a claim over which the court lacks jurisdiction." *Id*. (citations omitted). "Prejudice to a party that will justify denial of leave to amend is prejudice that arises when the amendment would prevent the party from having a fair trial." *Sands Appliance Servs, Inc v Wilson*, 463 Mich 231, 239 n 6; 615 NW2d 241 (2000). "It must stem from the fact that the new allegations are offered late, not that they might cause a party to lose on the merits." *Id*.

"Absent bad faith or actual prejudice to the opposing party, delay, alone, does not warrant denial of a motion to amend." *Lane v KinderCare Learning Centers, Inc*, 231 Mich App 689, 697; 588 NW2d 715 (1998). "[A]mendment is generally a matter of right, rather than grace." *Id*.

Initially, we are inclined to agree with BRT that its proposed amended complaint would not be "futile." The allegations raised in the proposed amended complaint indicate that Portage, SPNR3, and Pernick engaged in subterfuge to obtain licenses to which they would not be otherwise entitled. The allegations further indicate that parties such as BRT may have been able to obtain these licenses themselves if Portage, SPNR3, and Pernick did not engage in subterfuge. Moreover, there is no suggestion that Port Huron was complicit in the alleged subterfuge. Instead, the allegations indicate, and there apparently is no dispute, that Port Huron had no knowledge that Portage, SPNR3, and Pernick were maneuvering to transfer license ownership. These allegations, regardless of whether BRT and other similarly situated parties would be entitled to relief on the merits, are not "futile" on their face. See *PT Today*, 270 Mich App at 143.

Nonetheless, bearing in mind the deferential abuse-of-discretion standard, we conclude that the trial court did not abuse its discretion by denying BRT's motion to file an amended complaint for two reasons.[7] First, the amended complaint would have added parties to this litigation. Thus, this litigation would not merely have expanded the legal issues already pending, the matter would have expanded the parties involved in the litigation. BRT, as well as the other appellants raising the same issue, seemingly overlooked this fact. See footnote six, *supra*.[8]

---

[7] Our reasoning here applies with equal force to the similar arguments raised by other parties in these consolidated appeals.

[8] Admittedly, whether an amended complaint would add one or more parties to the litigation is not one of the express factors that a trial court should consider when deciding to grant a motion to file

Second, while not expressly discussed by the trial court, several of the intervenors would have been unduly prejudiced if the amended complaints were allowed to be filed. In particular, while the trial court granted summary disposition of the numerous claims raised in the earlier complaints, thus ending the litigation in that court, allowing the amended complaints to be filed would have extended this litigation for months or years. As Green Standard observes on appeal, "[s]uccessful applicants such as Green Standard would be forced to continue defending themselves in litigation for an extended period of time by the amendments, and the amendments are not aimed at any conduct or wrongdoing on the part of such entitles. Indeed, Green Standard . . . has nothing to do with the licenses issued to Portage Acquisitions, Inc." Further, as the trial court correctly observed, there was nothing prohibiting the allegedly aggrieved parties from maintaining a separate case against Portage, SPNR3, and Pernick. Indeed, counsel for JARS, who addressed the trial court on behalf of several of the appellants in this case during the January 27, 2023 motion hearing, conceded that a separate case could be maintained:

> *The Court*: Okay. In the Proposed Amended Complaint and the allegations contained in it are those not matters that can be brought in a separate lawsuit?
>
> *Mr. Deluca*: 100 percent. Yes.
>
> *The Court*: Then why do we need to amend the Complaint in this case to do that?
>
> *Mr. Deluca*: Well, we thought it was proper that the allegations be brought before this Court can be considered in response to the Intervening Defendants' motions and the Plaintiff's or City's motion. But you are correct. There's nothing precluding us from filing a separate action against those Defendants involving those new claims.
>
> * * *
>
> *Mr. Deluca*: . . . You were correct it can be brought by separate action.
>
> *The Court*: Okay.
>
> *Mr. Deluca*: And they will be.[9]

---

an amended complaint. See *PT Today*, 270 Mich App at 143. However, we suspect that this is because there are separate rules governing the addition of parties.

[9] The trial court told the attorneys at the hearing that it would hear from one attorney on behalf of the objecting parties to avoid repetitive arguments. Counsel for JARS was selected to address the court. After he finished, the trial court invited the other attorneys to voice any additional issues, and counsel for Trucenta stated that "there's an argument, I think if this is a final Order that the City of Port Huron can make, that res judicata would apply to them as far as what their actions

We acknowledge BRT's argument that the reason its motion to file an amended complaint was filed relatively late in the litigation was because it did not learn of the alleged wrongdoing until discovery.[10] However, the initiation of this case already delayed the opening of the marijuana facilities in Port Huron for an extended period of time. That is, while the voters approved the ordinance in November 2020, the trial court did not resolve the uncertainty about those facilities until it finally decided this case in January 2023. While "undue prejudice" typically concerns prejudice to party, see, e.g., *Sands Appliance Servs*, 463 Mich at 239 n 6, if this litigation continued, there also would be "undue prejudice" to the voters as well. In other words, as stated by Port Huron, "City of Port Huron voters approved the ordinance in November 2020, yet because of the Injunction Order [sic], no action was taken for almost two years to further the intent of the ordinance. Such is a clear prejudice to the City, its voters, and the other parties."

For these reasons, we conclude that the trial court did not abuse its discretion by denying BRT's motion to file an amended complaint.

### IV. DOCKET NO. 365006

In Docket No. 365006, Trucenta argues that the trial court erred by granting the motions for summary disposition because the ordinance at issue is a regulatory ordinance, not a zoning ordinance. According to Trucenta, the ordinance is a zoning ordinance because it limits land use and, under Michigan law, a zoning ordinance cannot be enacted by initiative. Instead, a zoning ordinance must be enacted by the ordinary municipal legislative process. Trucenta also argues that the trial court abused its discretion by denying Trucenta's motion to file a second amended complaint.[11] We disagree.

---

were in this action." The trial court did not directly respond to this argument. No other attorneys raised any issue with the assertion by counsel for JARS that a separate action could be maintained.

With regard to the issue of res judicata, we note that res judicata applies to claims that "the parties, exercising reasonable diligence, could have raised but did not" in the prior proceeding. *Sprague v Buhagiar*, 213 Mich App 310, 313; 539 NW2d 587 (1995) (quotation marks and citation omitted). Arguably, the claims in dispute here could not have been raised with "reasonable diligence" in these proceedings, but that matter may be resolved by the trial court if it arises in a separate action against Port Huron.

[10] In a brief filed in Docket No. 365006, Progress argues that the trial court properly denied the respective motions to file amended complaints because BRT and other similarly situated parties delayed filing the motions. We find this argument a bit disingenuous, as the delay apparently was attributable to the fact that the alleged wrongdoing was not ascertained until the litigation's discovery phase.

[11] In its brief filed in Docket No. 365006, Progress asserts that the allegations of wrongdoing against Progress, SPNR3, and Pernick are unfair and misleading. For example, Progress asserts that "[i]t is . . . not uncommon in the cannabis industry for successful applicants to transfer the licenses they received from these municipalities to newly reorganized entities with different capital structures, with the understanding that those new entities receiving those licenses will be the ones

"An initiative that purports to enact or amend a zoning ordinance is invalid unless it complied with the procedural requirements found in the Michigan Zoning Enabling Act (MZEA), MCL 125.3101 *et seq.*" *Save Our Downtown v City of Traverse City*, 343 Mich App 523, 539; 997 NW2d 498 (2022). For example, because the MZEA requires an opportunity for affected property owners to file written objections to the proposed zoning ordinance, an initiative that fails to offer that opportunity renders the resulting zoning ordinance invalid. See *Korash v City of Livonia*, 388 Mich 737, 745; 202 NW2d 803 (1972). Essentially, all zoning ordinances enacted by initiative are invalid. See *id*. at 744.

"A zoning ordinance regulates the use of land and buildings according to districts, areas, or locations." *Natural Aggregates Corp v Brighton Twp*, 213 Mich App 287, 298; 539 NW2d 761 (1995). "Whether a particular ordinance is a zoning ordinance may be determined by considering the substance of its provisions and terms, and its relation to the general plan of zoning in the city." *Id*. "The distinction between zoning and regulatory ordinances cannot be predicated on whether the purpose of the ordinance is to promote the public good, since both may have as their purpose the public good." *Id*. at 298-299. Moreover, 8 McQuillin, Municipal Corporations, § 25.59, explains as follows:

> [F]or purposes of distinguishing between zoning ordinances and non-zoning police power ordinances, zoning ordinances typically divide a geographic area into multiple zones or districts. Within the districts or zones certain uses are typically allowed as of right and certain uses are prohibited by virtue of not being included in the list of permissive uses for a district. In general, zoning ordinances provide landowners with permitted uses, which allow a landowner to use his or her land, in said manner, as of right; *zoning ordinances are traditionally aimed at directly controlling where a use takes place, as opposed to how it takes place*, classify uses in general terms, and attempt to comprehensively address all possible uses in the geographic area. . . . [Emphasis added.]

We conclude that the ordinance at issue is a regulatory ordinance, not a zoning ordinance. Initially, we note that Port Huron Ordinances, § 12-601(b), provides that "[t]he provisions of this article are regulatory in nature and not intended to be interpreted as zoning laws." Zoning ordinances are found in Chapter 52 of the Port Huron Ordinances, which is titled "Zoning."

Nearly all of the provisions of the ordinance at issue concern the operation of marijuana facilities, not where those facilities must operate. For example, Port Huron Ordinances, § 12-603(b)(2) provides that a marijuana facility cannot publicly display "[a]nything that resembles any part of a marihuana plant." Indeed, we cannot identify a particular provision in the ordinance that expressly limits where a marijuana facility may, or may not, operate within the municipality. Such provisions are separately found in Chapter 52. See Port Huron Ordinances, § 52-704(1) ("All marihuana businesses must meet the following location criteria, except marihuana safety-compliance facilities or establishments . . . .").

---

actually operating those businesses." We express no opinion on the merits of the alleged wrongdoing, as it is not before us.

On appeal, Trucenta identifies the following provisions of the ordinance that allegedly render it a zoning ordinance: Port Huron Ordinances, §§ 12-601, 12-604, 12-605, 12-607(f)(5), 12-607(i)(5), 12-607(j)(4), 12-607(k)(5), 12-608(4), and 12-615. However, none of these provisions regulate where land use occurs in a manner suggesting the existence of a zoning ordinance, not a regulatory ordinance. Section 12-601 is a purpose provision stating that "[t]he purpose of this article is to authorize and regulate within the City the business operations of persons licensed by the state to operate marihuana facilities and marihuana establishments"; § 12-604 sets forth the numbers of licenses that may be issued for the respective types of marijuana facilities; § 12-605 governs "an application process to apply for provisional licenses"; §§ 12-607(f)(5), (i)(5), (j)(4), and (k)(5) involve structure size; § 12-608(4) places time limitations on when marijuana facilities may operate during the day; and § 12-615 is a severability provision.

We acknowledge that some of these provisions, such as the provisions involving structure size, might be found in a typical zoning ordinance. However, "[n]o single characteristic or consideration is dispositive of the question whether a challenged ordinance is a zoning ordinance." 8 McQuillin, Municipal Corporations, § 25.59. On balance, for the reasons explained, the ordinance at issue is regulatory, not zoning.

Trucenta also argues that the trial court abused its discretion by denying Trucenta's motion to file a second amended complaint. However, for the reasons explained in Part III, *supra*, we conclude that the trial court did not abuse its discretion in this regard.

V. DOCKET NO. 365021

In Docket No. 365021, 1864 also argues that the trial court erred by granting the various motions for summary disposition. According to 1864, the trial court failed to recognize that (1) 1864 had a due-process property right to have its application properly scored, (2) Port Huron incorrectly scored 1864's application because the area covered by the gas-station canopy should have counted for purposes of the 2,000 square-foot minimum structure size, and (3) the 2,000 square-foot minimum structure size is unauthorized by the MRTMA.[12] We disagree.

"The guarantee of procedural due process requires notice and an opportunity to be heard prior to a deprivation of life, liberty, or property." *Cary Investments, LLC v City of Mount Pleasant*, 342 Mich App 304, 315; 994 NW2d 802 (2022) (quotation marks and citation omitted). "In general terms, a license does not convey property rights under Michigan law." *Pinebrook Warren, LLC v City of Warren*, 343 Mich App 127, 159; 996 NW2d 754 (2022). Moreover, "first-time applicants for licenses are not entitled to minimal due process." *Id*. at 160. "This is because a property right must be premised on more than a mere unilateral expectation." *Id*. (quotation marks and citation omitted). "For that reason, the procedural protections of the Due Process Clause do not apply to the determination whether to issue a license in the first instance." *Id*. at 160-161 (quotation marks and citation omitted). "This Court's review of a city's decisions regarding first-

---

[12] 1864 acknowledges that its third argument is foreclosed by caselaw, but it asks this Court to indicate that this caselaw was wrongly decided. We decline the invitation.

time applicants is extremely narrow and limited only to whether or not the city has acted arbitrarily and capriciously." *Id*. at 161 (quotation marks and citations omitted).

Given these principles, we reject 1864's argument that it had a property interest, for the purposes of procedural due process, in having its application property scored. 1864 does, however, have a right to judicial review in this context to ensure that Port Huron's consideration of its application was not arbitrary and capricious. See *id*.

We conclude that Port Huron did not act arbitrarily and capriciously by declining to award 10 points to 1864's application for a structure exceeding 2,000 square feet. Port Huron Ordinances, § 12-607(f)(5), which 1864 cites as the controlling provision, provides as follows:

> Structural suitability. This category allocates points based on whether the business facility address is likely to be in compliance with the MMFLA, the time it will take for the business facility address to come into compliance with the MMFLA, and the safety risk posed by building structures that are not well suited to operate as marihuana facilities. A maximum of 10 points shall be awarded for this category. Application information in § **12-605(13)** shall be used for the purposes of allocating points in this category. If the application is for a provisioning center license type and the business facility address contains a minimum of 2,000 square feet, 10 points shall be awarded for this category. If the application is for a cultivation license type or for a marihuana grower license type and the business facility address contains a minimum of 2,000 square feet, 10 points shall be awarded for this category.

In addition, Port Huron Ordinances, § 12-602, defines "business facility address" as follows:

> The singular United States postal address, for a building structure located atop a land parcel, where a marihuana establishment or marihuana facility is proposed to be located for a license type listed in an application to the City. The existing square footage of the building structure at the business facility address shall solely be used for measuring the square footage of the business facility address.

Further, Port Huron Ordinances, § 12-605(13), which is incorporated by § 12-607(f)(5), refers to the following:

> A site plan or preliminary sketch of the proposed facility, detailing the location of basic security features, entrances and exits, dimensions, and proposed layout of the business facility address. This may include the square footage of the business facility address and the location of any shared walls, bathrooms, doors, air-ventilation systems, or facilities with nonmarihuana businesses and the location of any business facility adjacent addresses. The applicant may note if they are applying to be a vertically integrated facility by noting other license types that they are applying for at the business facility address.

1864 states that "[i]t is undisputed that the existing gas station consisted of a retail sales building of 535 square feet and an accessory structure (canopy) of 1501 square feet. . . . Thus, the

existing square footage of the building and structure at the business facility address was 2036 square feet, an area in excess of the 2000 square feet needed for 10 points."

Because the plain language of the ordinance supports Port Huron's position for two reasons, Port Huron did not act arbitrarily and capriciously by declining to award 10 points to 1864's application for a structure exceeding 2,000 square feet. First, Port Huron Ordinances, § 12-602, refers to "a building structure." The use of the term "a," in this context, indicates that Port Huron must consider a single building structure, not multiple building structures that are physically adjoining. Indeed, the same section of the ordinance defines "business facility adjacent address" as "[t]he singular United States postal address of a building structure which is physically adjoining or directly physically touching the building structure of a business facility address." This suggests that the term "a building structure" is limited to a single building structure, and any other structure, such as a gas-station canopy, is separately considered as a distinct structure that is "directly physically touching the building structure of a business facility address."

Second, Port Huron Ordinances, § 12-605(13), contemplates a single, enclosed building structure. For example, that provision refers to "entrances and exits" and "basic security features." This language suggests that Port Huron Ordinances, § 12-605(13), concerns a single structure with controlled entrances and exits, as well as controlled security features to regulate entering and exiting. Separate, open-air structures such as the gas-station canopy at issue do not have such controls. Because Port Huron Ordinances, § 12-607(f)(5), incorporates § 12-605(13), the term "a building structure" in the former provision should be interpreted consistently with the latter provision. Thus, the term "a building structure" in Port Huron Ordinances, § 12-607(f)(5), refers to a single enclosed building structure.[13]

At a minimum, even assuming that 1864 had a property interest in its requested license, and assuming that Port Huron Ordinances, § 12-607(f)(5), reasonably may be interpreted as including accessory structures such as the gas-station canopy, Port Huron's contrary decision that the gas-station canopy should not be included in the 2,000 square-foot minimum is reasonable as well and will not be second-guessed by this Court. See *Cary Investments*, 342 Mich App at 319 ("The right to due process guaranteed by the United States Constitution and the Michigan Constitution of 1963 does not empower courts to micromanage the decision-making of governmental entities. Asking this Court to second-guess the selection committee's scoring of the

---

[13] 1864 refers to other, unrelated chapters in the Port Huron Ordinances to establish that the term "a building structure," as used in Port Huron Ordinances, § 12-607(f)(5), contemplates accessory structures such as the gas-station canopy. We acknowledge that in different contexts, the term "building" might incorporate accessory structures such as the gas-station canopy. See, e.g., Port Huron Ordinances, § 52-3. However, in this context, which involves a specific voter-approved ordinance relating to marijuana facilities, the term "a building structure" may be given meaning by the ordinance itself.

numerous applicants competing for three licenses fundamentally misapprehends our role in enforcing the constitutional right to due process.") (citation omitted).[14]

1864 alternatively argues that Port Huron Ordinances, § 12-607(f)(5), is void because it conflicts with MCL 333.27959(4) the MRTMA. 1864 observes that MCL 333.27959(4) provides that, "[i]f a municipality limits the number of marihuana establishments that may be licensed in the municipality . . . , the municipality shall decide among competing applications by a competitive process intended to select applicants who are best suited to operate in compliance with this act within the municipality." According to 1864, MCL 333.27959(4) only authorizes a municipality to decide among competing applications by considering factors that are directly related to compliance with the MRTMA. Thus, 1864 argues, because the presence or absence of a 2,000 square-foot building is not directly related to compliance with the MRTMA, that aspect of the Port Huron application process must be voided.

However, as 1864 acknowledges, this Court recently held otherwise. In *Yellow Tail Ventures, Inc v City of Berkley*, 344 Mich App 689; 1 NW3d 860 (2022), this Court held that MCL 333.27959(4) "permit[s] a municipality to craft criteria suited to its own local concerns, provided that the criteria conform to the other provisions of the MRTMA." *Id*. at 701. Here, Port Huron Ordinances, § 12-607(f)(5), addresses such local concerns. For example, Port Huron (or, more precisely, the voters) reasonably may have concluded that a larger building structure allows for more safety and security features than a smaller building structure. Thus, Port Huron Ordinances, § 12-607(f)(5), and other similar provisions within the ordinance, do not conflict with the MRTMA.

## VI. DOCKET NO. 365088

In Docket No. 365088, JARS argues that the trial court erred by granting the various motions for summary disposition because it failed to recognize that Port Huron's licensing process violated the MRTMA. JARS observes that MCL 333.27959(4) of the MRTMA requires that a licensing process be "competitive" and, because Portage, SPNR3, and Pernick engaged in subterfuge to obtain licenses, the licensing process in this case was not "competitive." This, JARS contends, precludes summary disposition in favor of Port Huron and the other intervenors. Finally, JARS argues that the trial court abused its discretion by not allowing the other parties to amend their respective complaints.

MCL 333.27959(4) provides as follows:

> If a municipality limits the number of marihuana establishments that may be licensed in the municipality pursuant to section 6 of this act and that limit prevents the department from issuing a state license to all applicants who meet the requirements of subsection 3 of this section, the municipality shall decide among competing applications by a *competitive process* intended to select applicants who

---

[14] 1864 also argues that Port Huron should have considered the square footage of its proposed structure, not the existing structure. However, the plain language of Port Huron Ordinances, § 12-602, refers to "[t]he *existing* square footage of the building structure." (Emphasis added.)

are best suited to operate in compliance with this act within the municipality. [Emphasis added.]

We agree with JARS that the language "competitive process" implies a fair, neutral application process that is free from bias, fraud, or subterfuge. Moreover, we also agree with JARS that the allegations involving Portage, SPNR3, and Pernick, if true, possibly suggest that the application process was, unbeknownst to Port Huron, not a true "competitive process."

However, that issue of statutory interpretation was not before the trial court when it decided the various motions for summary disposition. The trial court was aware of the issue but observed, correctly, in footnote 13 of its January 6, 2023 opinion and order that

> Plaintiffs further argue that the competitive process was nullified by the actions of an individual named Sam Pernick, who was involved with Progress and its authoring of the FPO and SPO. During the course of discovery, it was uncovered that he formed SPNR3, a limited liability corporation, and entered into a contract with successful applicant Portage Acquisitions, Inc. ("Portage") that required Portage to apply for and hold local licenses for the benefit of SPNR3. However, this issue is not before the Court at this time. All Motions before the Court address Plaintiffs' First Amended Complaints, which do not make these specific allegations. There have been a number of motions filed seeking to amend Complaints, but the Court has not yet heard or considered them.

In other words, the issue raised by JARS in this appeal was not before the trial court when it granted the respective motions for summary disposition.[15] While the issue was considered by the trial court a few weeks later when it addressed the respective motions to file amended complaints, for the reasons we have explained, the trial court did not abuse its discretion when it denied those motions. As noted in our opinion, and as counsel for JARS acknowledged in the trial court, a separate action may be maintained for the claims arising from the alleged subterfuge. In other words, given the procedural posture of this case, the issue raised by JARS may be maintained

---

[15] JARS argues that the trial court, when considering the various motions for summary disposition, should have considered the alleged subterfuge by Portage, SPNR3, and Pernick despite the fact that it had not granted any of the respective motions to file amended complaints. According to JARS, because MCR 2.116(G)(5) generally provides that "the affidavits, together with the pleadings, depositions, admissions, and documentary evidence then filed in the action or submitted by the parties, must be considered by the court" when deciding a motion for summary disposition, and because the facts about the alleged subterfuge were in the "documentary evidence then filed in the action," the trial court was required to consider those facts.

This argument misses the mark. When deciding a motion for summary disposition, the trial court is required to consider the "specif[ic] grounds" raised by the parties. See MCR 2.116(C). Thus, the trial court is not required to scour the entire factual record to identify and address all possible legal issues but, instead, only is required to address the legal issues properly raised by the parties.

-17-

in a separate action.  It is not an issue properly before us in the instant matter.  Therefore, reversal is not warranted.

## VII.  CONCLUSION

The trial court did not abuse its discretion by denying the respective motions to file amended complaints.  Nor did the trial court err by granting the various motions for summary disposition.  Therefore, in these consolidated appeals, we affirm.

/s/ Michael J. Riordan
/s/ Michelle M. Rick
/s/ Noah P. Hood